PEOPLE v GREENE

Docket No. 239074. Submitted November 6, 2002, at Lansing. Decided
    February 21, 2003, at 9:00 A.M.

Jimmy E. Greene, Jr., following a preliminary examination in the 15th
    District Court, Elizabeth P. Hines, J., was bound over for trial in the
    Washtenaw Circuit Court on charges that included willfully imped-
    ing, interfering with, preventing, or obstructing or attempting to
    willfully impede, interfere with, prevent, or obstruct the ability of a
    witness to attend, testify, or provide information in or for a present
    or future official proceeding. MCL 750.122(6). The witness-tamper-
    ing charge related to the defendant's unsuccessful attempt in a
    three-way telephone call from jail to persuade his girlfriend not to
    obey a subpoena to appear as a prosecution witness in his prelimi-
    nary examination on other charges. The circuit court, Donald E.
    Shelton, J., quashed the information with respect to the witness-
    tampering charge, concluding that at the preliminary examination
    there was not evidence from which the district court could have
    found probable cause to believe that the defendant had committed
    the charged offense. The prosecution appealed.

    The Court of Appeals *held*:

    1. A violation of MCL 750.122(6) is established with proof that
    the defendant committed or attempted to commit an act that did
    not consist of bribery, threats or intimidation, or retaliation as
    defined in MCL 750.122 and applicable case law, but was any act or
    attempt that was done willfully to impede, interfere with, prevent,
    or obstruct a witness's ability to attend, testify, or provide informa-
    tion in or for a present or future official proceeding having the
    knowledge or the reason to know that the person subjected to the
    interference could be a witness at any official proceeding.

    2. At the preliminary examination, the prosecution need not
    prove beyond a reasonable doubt that the defendant committed the
    crime charged. If the evidence introduced at the preliminary exami-
    nation conflicts or raises a doubt about the defendant's guilt, the
    examining magistrate must let the fact-finder at trial resolve those
    questions of fact. In this case, the district court did not abuse its
    discretion in binding the defendant over for trial because the evi-
    dence adduced at the preliminary examination presented a factual

question concerning whether the defendant's appeals to his girlfriend not to attend the preliminary examination constituted interference. The evidence presented at the preliminary examination would allow a reasonable person to infer that the defendant knew his girlfriend would be attending the preliminary examination to provide testimony against him; the defendant did not want his girlfriend to attend the hearing; the defendant chose not to use bribery, threats or intimidation, or retaliation to dissuade his girlfriend from attending the hearing; the defendant then willfully attempted to interfere with his girlfriend's intention to attend the hearing by telling her explicitly not to attend, playing to her feelings for him, and assuring her that the consequences would be minor or nonexistent; and this interference attempted to affect her ability to attend the hearing by impairing her ability to do the right thing, which was to obey the subpoena.

Reversed and remanded for further proceedings.

KELLY, J., dissenting, would affirm the circuit court's ruling that the district court abused its discretion in binding the defendant over for trial. Although the evidence showed that the defendant did not want his girlfriend to attend the preliminary examination and stated this desire along with some reasons designed to persuade her not to obey the subpoena, it did not demonstrate that the defendant attempted to impair her ability to appear. The defendant's attempt to interfere with his girlfriend's intention to attend cannot be equated with an attempt to impair her ability to attend. A plain reading of MCL 750.122(6) clearly establishes that it is limited to prohibiting conduct that places, or attempts to place, a barrier between the witness and the system.

CRIMINAL LAW — INTERFERING WITH A WITNESS.

The offense of willfully impeding, interfering with, preventing, or obstructing or attempting to willfully impede, interfere with, prevent, or obstruct the ability of a witness to attend, testify, or provide information in or for a present or future official proceeding is established with proof that the defendant committed or attempted to commit an act that did not consist of bribery, threats or intimidation, or retaliation, but was any act or attempt that was done willfully to impede, interfere with, prevent, or obstruct a witness's ability to attend, testify, or provide information in or for a present or future official proceeding having the knowledge or the reason to know that the person subjected to the interference could be a witness at any official proceeding (MCL 750.122[6]).

*Michael A. Cox,* Attorney General, *Thomas L. Casey,* Solicitor General, *Brian L. Mackie,* Pros-

ecuting Attorney, and *Mark Kneisel,* Assistant Prosecuting Attorney, for the people.

*Lynn B. D'Orio* for the defendant.

Before: WHITBECK, C.J., and HOOD and KELLY, JJ.

WHITBECK, C.J. This is a case of first impression in which we must construe and apply MCL 750.122(6), a relatively new witness-tampering statute, to determine whether the circuit court erred in quashing the information. The prosecutor appeals by right. We reverse and remand for further proceedings.

## I. BASIC FACTS AND PROCEDURAL HISTORY

The prosecutor originally charged defendant Jimmy Eric Greene, Jr., with manslaughter for the willful killing of an unborn quick child[1] after he allegedly physically assaulted his pregnant girlfriend, Christa Hughbanks. At his arraignment, the district court ordered Greene not to have any contact with Hughbanks.

Greene moved to adjourn the preliminary examination so his attorney could study medical records regarding the death. During the discussion of the motion, the prosecutor expressed concern that Hughbanks, who was present and available to testify, might not return to court for future proceedings. The prosecutor revealed that Greene had contacted Hughbanks from jail and told her not to come to court, and that those conversations had been recorded. The district court ruled that the preliminary examination would commence that day with

[1] MCL 750.322.

Hughbanks' testimony, but the examination of other witnesses would be adjourned to allow Greene time to prepare. Hughbanks testified about a fight she had with Greene, as well as her reluctance to testify against him because she still loved him. She also admitted that she had talked with Greene on the telephone while he was incarcerated.

A few days later, the prosecutor filed a new criminal information charging Greene with witness intimidation and reciting the language of MCL 750.122(3), which prohibits using threats or intimidation to tamper with a witness. When the district court reconvened for the second part of the preliminary examination, this charge was added to the scope of the examination. The testimony previously presented was, by stipulation, applied to the new charge, and Hughbanks was questioned again.

The district court received in evidence the taped conversation and a transcript of the conversation. Greene did not challenge that evidence. The transcript reflected many inaudible parts, evidently because Greene called an acquaintance from the jail, and the acquaintance used three-way calling on the telephone to bring Hughbanks into the conversation.

In the telephone call, Greene asked Hughbanks about what her sister, who had witnessed the altercation at the center of the prosecution, planned to testify. There was some difficulty hearing all three callers, so sometimes Greene told his acquaintance to pass messages to Hughbanks rather than attempt to speak directly with her. When informed that Hughbanks' sister planned to testify that she saw Greene hit Hughbanks, Greene said:

J [defendant Jimmy Greene]: Tell her if her sister's gonna say that tell her on the 13th don't even show up.

F [unknown female]: Okay—hold on.

F: Christie—Christie—Christie . . .

Inaudible discussion

J: Krisha—No—tell her not to come.

F: Christa?

J: Yeah

F: *Christa—you don't come on the 13th.*

C [Christa Hughbanks]: Me—*I'll get a warrant for my arrest.*

F: *She said she subpoenaead [sic], too.*

J: *Tell her it's only a $150 fine.*

F: He said it's only a $150 fine.

C: *That it?*

F: Yeah

J: *Tell her that's the only way I'm gonna get up off of it.*

\*          \*          \*

J: Tell her if her sister gonna say—*I ain't touch it tell her don't even show up.*

F: He said if your sister do show up—don't show up on the 13th.

C: *But they gonna have a warrant for my arrest.*

J: *No they won't.*

C: No they won't—he says—

J: *I already talked to my lawyer.*

F: He already talked to his lawyer.

C: *I don't know what to do—I was subpoenaed to come to court on Wednesday.*

F: She said she was—I was subpoenaed today—to come on Wednesday.

J: *That don't matter, that subpoena ain't shit.*

F: He said it don't matter that subpoena ain't nothing.

\*          \*          \*

J: Tell her all she gotta do is lay low until after 5:00.

F: All you gotta do is lay low until after 5:00.

C: They're gonna know where to find me. Tell him that they know—I got an appointment at The Corner [medical clinic] at 3:45.

F: They know she's got an appointment at The Corner at 3:45.

J: But the court is at 1:00—tell them fucked up on the appointment.

F: She said she don't care about her health now.

J: Just tell her go over to Pigeon's house and chill out until after 5:00 when the court close.

F: Inaudible

J: Hello?

F: Whose house?

J: Tell her to go to Pigeon Toe's house and chill out until after 5:00.[2]

Greene twice repeated that Hughbanks should stay away from court until after 5:00, when the court would close, and that Hughbanks only had to say "she forgot." Greene also said that, wherever Hughbanks went, she could not be in her car.

In another conversation, Greene repeated his desire that Hughbanks stay away from court:

J: You gotta wait—I gotta get my probation transferred and shit . . . but look, when the time comes, you gotta just leave early that morning and stay gone until after 5:00— straight up.

C: Okay.

J: Just say your people—

C: She told me herself.

J: What?

C: _____ Inaudible . . . and I was tellin' people _____ grabbed her and _____ pulled her _____ it's in her statement _____

---

2 Emphasis added.

J: They even—got it out that I beat her up.

C: Yeah, they tried to ask me that, I said "No—
_____ "

J: They gotta say she called cryin', and I beat her up.

C: _____

J: You know ol' girl not black—

C: Who?

J: My peeps—all you gotta do is walk over there early—
and just stay gone until the court closes about 5:00—

Greene also said that his lawyer visited and "he said they're gonna try to break you in court so it's best that you just lay low."

At the preliminary examination, Hughbanks testified that she did not feel intimidated by Greene, she did not think he was going to harm her, and she was not afraid to come to court. She confirmed that she still wanted to have contact with him.

At the close of proofs, the prosecutor moved to amend the information to conform to the proofs and charge Greene under a different subsection of the witness intimidation statute, MCL 750.122(6), which provides:

A person shall not willfully impede, interfere with, prevent, or obstruct or attempt to willfully impede, interfere with, prevent, or obstruct the ability of a witness to attend, testify, or provide information in or for a present or future official proceeding

The district court granted the motion to amend and bound Greene over for trial, explaining:

In terms of the witness intimidation, looking at the statute and the amended provision, subsection 6 and the language therein, I do find based on Exhibit 14 [the telephone transcript] and the stipulation as to where and when that

occurred, that the defendant did willfully interfere or attempt to interfere with the ability of Christa Hughbanks to attend and or testify at the preliminary examination in clear violation of a no contact provision. The testimony convinces me that on June 6th, from the jail, the defendant took elaborate steps, according to the transcript, he knew he couldn't directly so he worked through third parties to call her and convince her that she shouldn't attend, even tell her where she should go and how long to stay and despite her questions about being under subpoena told her that was worthless, in clearer terms, and tried to in fact convince her and interfere with her ability to attend and testify at the preliminary examination.

The prosecutor subsequently filed a new information alleging that Greene had violated MCL 750.122(6).

In the circuit court, Greene moved to quash the information, arguing that the prosecution's evidence at the preliminary examination, if true, did not demonstrate that he violated the statute. The circuit court heard arguments and granted the motion, reasoning:

[T]he Court grants a great deal of leeway to Magistrates in reviewing the evidence and making decisions as to bind over, however, in this case, I believe that accepting all of the evidence as asserted by the prosecution, there was not evidence from which the Magistrate could have found probable cause to believe that the contact of the defendant on the date alleged falls within the provisions of this narrowly drawn statute, so I'm going to grant the motion to quash . . . .

## II. STANDARD OF REVIEW

The prosecutor has presented us with a single issue to decide in this case, but this appeal really exists at two levels. At the procedural level, the prosecutor

challenges the circuit court's decision to quash the information. The prosecutor argues that the circuit court improperly substituted its judgment for the district court in concluding that the evidence was insufficient to support bindover on the witness tampering charge. In reviewing this aspect of the appeal, we do not defer to the circuit court's determination to any extent; instead, we examine the district court's decision to determine whether it abused its discretion in ordering the bindover.[3] However, we must first interpret the witness tampering statute at issue in this case. At this substantive level, our task is a legal one, meriting review de novo.[4]

### III. WITNESS TAMPERING

The rules governing statutory construction that we apply to the witness tampering statute are well known:

> The lodestar principle of statutory construction is that courts must ascertain and give effect to the Legislature's intent in enacting a statute. "The task of discerning our Legislature's intent begins by examining the language of the statute itself." Using a dictionary if necessary, we construe "[a]ll words and phrases" "according to the common and approved usage of the language," but give terms of art and "technical words and phrases" any "peculiar and appropriate meaning" ascribed by the Legislature or acquired in common usage in the absence of legislative definition. If "the language of the statute is unambiguous, the plain meaning reflects the Legislature's intent and this Court applies the statute as written." Yet, "[w]hen reasonable minds may differ regarding the meaning of a statute, the

---

[3] See *People v Hudson*, 241 Mich App 268, 276; 615 NW2d 784 (2000).

[4] See *People v Koonce*, 466 Mich 515, 518; 648 NW2d 153 (2002).

courts must look to the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the purpose of the statute."[5]

To be clear, we do not intend to define the entire universe of actions that constitute the criminal conduct prohibited by MCL 750.122. Nevertheless, understanding the statute as a whole is helpful in our analysis of subsection 6, which the prosecutor claims Greene violated. MCL 750.122 provides:

(1) A person shall not give, offer to give, or promise anything of value to an individual for any of the following purposes:

(a) To discourage any individual from attending a present or future official proceeding as a witness, testifying at a present or future official proceeding, or giving information at a present or future official proceeding.

(b) To influence any individual's testimony at a present or future official proceeding.

(c) To encourage any individual to avoid legal process, to withhold testimony, or to testify falsely in a present or future official proceeding.

(2) Subsection (1) does not apply to the reimbursement or payment of reasonable costs for any witness to provide a statement to testify truthfully or provide truthful information in an official proceeding as provided for under section 16 of the uniform condemnation procedures act, 1980 PA 87, MCL 213.66, or section 2164 of the revised judicature act of 1961, 1961 PA 236, MCL 600.2164, or court rule.

(3) A person shall not do any of the following by threat or intimidation:

(a) Discourage or attempt to discourage any individual from attending a present or future official proceeding as a witness, testifying at a present or future official proceeding,

---

[5] *People v Meyers*, 250 Mich App 637, 643-644; 649 NW2d 123 (2002) (citations omitted).

or giving information at a present or future official proceeding.

(b) Influence or attempt to influence testimony at a present or future official proceeding.

(c) Encourage or attempt to encourage any individual to avoid legal process, to withhold testimony, or to testify falsely in a present or future official proceeding.

(4) It is an affirmative defense under subsections (1) and (3), for which the defendant has the burden of proof by a preponderance of the evidence, that the conduct consisted solely of lawful conduct and that the defendant's sole intention was to encourage, induce, or cause the other person to testify or provide evidence truthfully.

(5) Subsections (1) and (3) do not apply to any of the following:

(a) The lawful conduct of an attorney in the performance of his or her duties, such as advising a client.

(b) The lawful conduct or communications of a person as permitted by statute or other lawful privilege.

(6) A person shall not willfully impede, interfere with, prevent, or obstruct or attempt to willfully impede, interfere with, prevent, or obstruct the ability of a witness to attend, testify, or provide information in or for a present or future official proceeding.

(7) A person who violates this section is guilty of a crime as follows:

(a) Except as provided in subdivisions (b) and (c), the person is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $5,000.00, or both.

(b) If the violation is committed in a criminal case for which the maximum term of imprisonment for the violation is more than 10 years, or the violation is punishable by imprisonment for life or any term of years, the person is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $20,000.00, or both.

(c) If the violation involves committing or attempting to commit a crime or a threat to kill or injure any person or to cause property damage, the person is guilty of a felony pun-

ishable by imprisonment for not more than 15 years or a fine of not more than $25,000.00, or both.

(8) A person who retaliates, attempts to retaliate, or threatens to retaliate against another person for having been a witness in an official proceeding is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $20,000.00, or both. As used in this subsection, "retaliate" means to do any of the following:

(a) Commit or attempt to commit a crime against any person.

(b) Threaten to kill or injure any person or threaten to cause property damage.

(9) This section applies regardless of whether an official proceeding actually takes place or is pending or whether the individual has been subpoenaed or otherwise ordered to appear at the official proceeding if the person knows or has reason to know the other person could be a witness at any official proceeding.

(10) This section does not prohibit a person from being charged with, convicted of, or punished for any other violation of law arising out of the same transaction as the violation of this section.

(11) The court may order a term of imprisonment imposed for violating this section to be served consecutively to a term of imprisonment imposed for the commission of any other crime including any other violation of law arising out of the same transaction as the violation of this section.

(12) As used in this section:

(a) "Official proceeding" means a proceeding heard before a legislative, judicial, administrative, or other governmental agency or official authorized to hear evidence under oath, including a referee, prosecuting attorney, hearing examiner, commissioner, notary, or other person taking testimony or deposition in that proceeding.

(b) "Threaten or intimidate" does not mean a communication regarding the otherwise lawful access to courts or other branches of government, such as the otherwise lawful filing of any civil action or police report of which the pur-

pose is not to harass the other person in violation of sec-
tion 2907 of the revised judicature act of 1961, 1961 PA 236,
MCL 600.2907.

The unifying theme among these subsections is an
attempt to identify and criminalize the many ways
individuals can prevent or attempt to prevent a wit-
ness from appearing and providing truthful informa-
tion in some sort of official proceeding, as defined in
subsection 12(a). In the most general sense, the Legis-
lature identified four different categories of witness
tampering: bribery (subsection 1), threats or intimida-
tion (subsection 3), interference (subsection 6), and
retaliation (subsection 8). That the Legislature chose
*not* to place all these different types of tampering in
the same subsection suggests that the Legislature
considered them to be distinct. Conduct that violates
one subsection in MCL 750.122 may not necessarily
violate another subsection in the statute; conduct
necessary to violate one subsection may be unneces-
sary to violate another. Thus, as we examine the lan-
guage used in MCL 750.122(6), we are mindful that
the precise statutory description of the prohibited
criminal conduct, not necessarily notions of witness
tampering that existed at common law,[6] under other

---

[6] This Court in *People v Milstead*, 250 Mich App 391, 406 n 9; 648 NW2d
648 (2002), and *People v Sexton*, 250 Mich App 211, 224 n 5; 646 NW2d 875
(2002), recently noted that, in enacting MCL 750.122(6), the Legislature
codified the common-law crime of obstruction of justice. Notably, that
statement was obiter dictum, and therefore lacks the force of law because
the statute was not at issue in *Milstead* or *Sexton*, which were related
cases. See *People v Higuera*, 244 Mich App 429, 437; 625 NW2d 444
(2001). Additionally, we are not persuaded that, contrary to the plain lan-
guage in the statute but as Greene argues, MCL 750.122(6) follows any
common-law approach to obstruction of justice that would require
threats, intimidation, or physical interference as elements of this offense.

statutes, or even under other subsections of MCL 750.122, guides our interpretation.

Truth be told, subsection 6 is easily understandable. The Legislature used simple, but comprehensive, language in describing this crime. More in-depth scrutiny bears out this observation. The most eye-catching language in MCL 750.122(6) borders on the redundant. Identifying the *actus reus*, the criminal act, subsection 6 first refers to impeding, interfering with, preventing, or obstructing "the ability of a witness to attend, testify, or provide information in or for a present or future official proceeding." In everyday speech, these verbs are used as synonyms. For instance, a person who impedes another person may also be described as having obstructed or interfered with that other person. However, we are not at liberty to "ignore" the words used in subsection 6 by treating them as "surplusage," thereby rendering them "nugatory."[7] Consequently, we turn to a dictionary to determine whether there are, perhaps, any formal meanings to these words that might explain how they differ, contrary to their ordinary usages.

According to the dictionary, to "impede" means "to retard in movement or progress by means of obstacles or hindrances."[8] The dictionary uses "obstruct" and "hinder" as alternative definitions, and refers to the word "prevent" as a synonym for "impede."[9] In relevant part, to "interfere" means "to come into opposition or collision so as to hamper, hinder, or obstruct someone or something," or "to take part in

---

[7] *People v Randolph*, 466 Mich 532, 558; 648 NW2d 164 (2002).

[8] *Random House Webster's College Dictionary* (2d ed, 1997).

[9] *Id.*

the affairs of others," as in to "meddle."[10] Some of the definitions offered for "prevent" include "to keep [something] from occurring," to "stop from doing something," and "to interpose a hindrance."[11] Finally, to "obstruct" means "to block or close up with an obstacle" or "to hinder, interrupt, or delay the passage, progress, course, etc." of something.[12]

If there are significantly distinct meanings to these words, which even the dictionary uses as synonyms for each other, they are not the least apparent. At most, the definitions of these words present only degrees of difference in the same conduct. For example, someone who *impedes* a witness may not actually *prevent* the witness from testifying, but may only delay the testimony. Note, however, that the language in subsection 6 that criminalizes both a completed and attempted offense makes these extremely subtle shades of difference irrelevant in determining whether a defendant committed this crime. Consequently, we infer that, in using these four terms to describe what is effectively the same conduct, the Legislature intended to bar the tampering conduct, no matter how it is described, including in degrees of success.

Unlike some other crimes that a person can commit without involving anyone else, such as crimes against property, witness tampering self-evidently involves at least two people: the witness and the person committing the tampering. The words describing the prohibited conduct—impeding, interfering with,

---

[10] *Id.*

[11] *Id.*

[12] *Id.*

preventing, or obstructing—do not, alone, connect these two individuals. Rather, the word "ability" in subsection 6 is what ties the witness and, for lack of a better word, the tamperer to each other. "Ability" is the "power or capacity to do or act physically, mentally, legally, morally, or financially."[13] This is a broad description of the human facility to act, not at all limited to the logical ways in which a tamperer might try to interfere with a witness, including the witness's ability to travel, appear at the place designated for an "official proceeding,"[14] or biological ability to recall information or provide testimony, whether spoken, written, signed, or communicated in another manner. This breadth implies that subsection 6 makes illegal *any* act or attempt, no matter its form, to keep the witness from "attend[ing], testify[ing], or provid[ing] information in or for a present or future official proceeding"[15] by affecting the witness's ability to do so.

The only logical exceptions from these otherwise unlimited ways in which to achieve or attempt to achieve this interference are identified in subsections 1, 3, and 8. In other words, as long as the interference at issue does not consist of bribery, threats or intimidation, or retaliation as defined in MCL 750.122 and applicable case law, any act or attempt to impair the witness's *capacity* to "attend, testify, or provide information in or for a present or future official proceeding" violates subsection 6. Greene submits a number of committee reports in support of his contrary argument that the prosecutor had to prove that he threatened or intimidated Hughbanks to be guilty of

---

[13] *Id.*

[14] See MCL 750.122(12)(a).

[15] MCL 750.122(6).

violating MCL 750.122(6). However, this sort of extra-textual attempt to interpret MCL 750.122(6) is inappropriate in this case given the plain language in the statute, and the comprehensive inclusion of that sort of witness tampering in MCL 750.122(3).[16]

We cannot, of course, ignore that the Legislature included the word "willfully" in subsection 6. Willfulness, though having been defined in a number of ways over the years, essentially "implies knowledge and a purpose to do wrong."[17] This definition of willfulness incorporating knowledge is particularly appropriate for the way that term is used in subsection 6 because subsection 9, which applies to MCL 750.122 as a whole, makes clear that criminal liability attaches "if the person [committing the witness tampering] *knows or has reason to know* the other person could be a witness at any official proceeding."[18] This intent element provides an important safeguard against criminalizing innocent conduct not aimed at affecting the witness's ability to "attend, testify, or provide information in or for a present or future official proceeding," but which nevertheless has that effect.

In summary, to prove that a defendant has violated MCL 750.122(6), applying the explanations of various terms provided in this opinion, the prosecutor must prove that the defendant (1) committed or attempted to commit (2) an act that did not consist of bribery, threats or intimidation, or retaliation as defined in MCL 750.122 and applicable case law, (3) but was any

---

[16] See *In re Complaint of MCTA*, 241 Mich App 344, 371-374; 615 NW2d 255 (2000).

[17] *People v Lerma*, 66 Mich App 566, 570; 239 NW2d 424 (1976).

[18] Emphasis added.

act or attempt that was done willfully (4) to impede, interfere with, prevent, or obstruct (5) a witness's ability (6) to attend, testify, or provide information in or for a present or future official proceeding (7) having the knowledge or the reason to know that the person subjected to the interference could be a witness at any official proceeding. In this last part of the definition we use the word interference to include all types of conduct proscribed in subsection 6.

IV. BINDOVER

MCL 766.13 sets forth the criteria for bindover in terms of the district court's factual determinations following a preliminary examination:

> If it shall appear to the magistrate at the conclusion of the preliminary examination either that an offense has not been committed or that there is not probable cause for charging the defendant therewith, he shall discharge such defendant. If it shall appear to the magistrate at the conclusion of the preliminary examination that a felony has been committed and there is probable cause for charging the defendant therewith, the magistrate shall forthwith bind the defendant to appear before the circuit court of such county, or other court having jurisdiction of the cause, for trial.

As the prosecutor correctly emphasizes, at the preliminary examination, the prosecution need not prove beyond a reasonable doubt that the defendant committed the crime charged.[19] The threshold for the evidence necessary to bind over a defendant for trial is

---

[19] See *People v Justice (After Remand)*, 454 Mich 334, 343-344; 562 NW2d 652 (1997).

much lower than the evidenced needed to convict a
defendant of the crime at trial.[20]

> If the evidence introduced at the preliminary examination
> conflicts or raises a reasonable doubt about the defendant's
> guilt, the magistrate must let the factfinder at trial resolve
> those questions of fact. This requires binding the defendant
> over for trial. In other words, the magistrate may not weigh
> the evidence to determine the likelihood of conviction, but
> must restrict his or her attention to whether there is evi-
> dence regarding each of the elements of the offense, after
> examining the whole matter.[21]

" 'Circumstantial evidence and reasonable inferences
arising from the evidence are sufficient to support the
bindover of the defendant if such evidence estab-
lishes probable cause.' "[22] The evidence satisfies "the
'probable cause' standard when, 'by a reasonable
ground of suspicion, [it is] supported by circum-
stances sufficiently strong to warrant a cautious per-
son in the belief that the accused is guilty of the
offense charged.' "[23]

The prosecutor advances two arguments concern-
ing the evidence presented in the preliminary exami-
nation and why it met the bindover standard. First,
the prosecutor contends that MCL 750.122(6) does
not require evidence of threats or intimidation, which
the evidence at the preliminary examination sug-
gested did not exist in this case. On this point, we
agree. Our interpretation of MCL 750.122(6), which

---

[20] *Id.* at 344.

[21] *Hudson, supra* at 278 (citations omitted).

[22] *People v Brown*, 239 Mich App 735, 741; 610 NW2d 234 (2000), quot-
ing *People v Whipple*, 202 Mich App 428, 432; 509 NW2d 837 (1993).

[23] *Hudson, supra* at 279, quoting *People v Woods*, 200 Mich App 283,
288; 504 NW2d 24 (1993).

considered the content and structure of MCL 750.122 as a whole, leads us to believe that the Legislature intended to punish witness tampering that takes the form of bribery, threats or intimidation, or retaliation under different subsections, not under subsection 6. However, contrary to the prosecutor's contention, nothing in the record reveals that the circuit court was looking for evidence of threats or intimidation when examining the district court's decision to bind over Greene. In fact, the circuit court indicated that it was aware of the evidence on the record and its obligation to afford the district court "a great deal of leeway," meaning discretion, in making the bindover decision. The record plainly reflected that the prosecutor had changed the charge from witness tampering involving threats and intimidation contrary to MCL 750.122(3) to witness tampering that involved interference contrary to MCL 750.122(6). This may explain why the circuit court referred to the "narrowly drawn statute" at issue in this case, meaning that the circuit court was likely aware of the language and meaning of subsection 6. Without more, we cannot conclude that the circuit court applied the incorrect statutory language when examining the bindover decision.

The prosecutor's second argument is that interference can be inferred from the fact that Greene made an "end run around the system" by engaging in an complicated plan to speak with Hughbanks in violation of the no contact order by calling a third-party. That third-party then helped Greene and Hughbanks communicate. In other words, the prosecutor claims that evidence clearly existed that Greene attempted to interfere with Hughbanks' appearance at the pre-

liminary examination, which is an official proceeding, by appealing to her feelings for him.

We agree that the evidence adduced at the preliminary examination presented a factual question concerning whether Greene's appeals to Hughbanks not to attend the preliminary examination constituted interference. As we noted, the dictionary includes among the definitions of the word "ability" the "capacity" to act "morally."[24] The transcripts of the telephone conversations include several statements from Hughbanks indicating that she had received a subpoena to appear at a hearing (presumably the preliminary examination) that she knew she was supposed to appear at the hearing, and she was concerned about the consequences of failing to appear as ordered. Greene, however, dismissed Hughbanks' fear that the district court would issue an arrest warrant if she failed to appear at the hearing, saying that failing to appear would only result in a $150 fine. This comment arguably had an effect on Hughbanks at the moment; despite her early hesitation to comply with Greene's request not to appear at the hearing, after Greene minimized the potential consequence of disobeying the subpoena, she replied, "That's it?" This suggested that the result of failing to appear would be sufficiently insignificant for her to comply with Greene's directive and disobey the subpoena. When, later in the telephone conversation, Hughbanks appeared to be unconvinced that not showing up at the preliminary examination was what she should do, Greene resorted to a different tactic. He told her that he had consulted his attorney and that the subpoena

[24] See *Random House, supra.*

issued to her was ineffective, therefore implying that missing the hearing would not get Hughbanks into any trouble with the law. This evidence created a question of fact concerning whether Greene's conduct was an attempt to convince Hughbanks to ignore the "distinction between right"—obeying the subpoena— "and wrong"—failing to appear at the hearing—and thereby overcome her initial, moral inclination to appear at the preliminary examination.[25]

We do not hold that a request, alone, not to attend a hearing or a stated desire that a witness not attend a hearing would be unlawful under MCL 750.122(6). Neither act would necessarily affect a witness's *ability* to attend a hearing. Nor do we intend to imply that Greene will be convicted of this offense. Rather, in sum, the evidence presented at the preliminary examination would allow a reasonable person to infer that Greene knew Hughbanks would be attending the preliminary examination to provide testimony against him; Greene did not want Hughbanks to attend the hearing; Greene chose not to use bribery, threats or intimidation, or retaliation to dissuade Hughbanks from attending the hearing; Greene then willfully attempted to interfere with Hughbanks' intention to attend that hearing by telling her explicitly not to attend, playing to her feelings for him, and assuring her that the consequences would be minor or nonexistent; and this interference attempted to affect her ability to attend the hearing by impairing her ability to choose to do the right thing, which was to obey the subpoena. Ultimately, of course, Hughbanks did

---

[25] See *id.* (the adjective "moral" means "of, pertaining to, or concerned with the principles of right conduct or the distinction between right and wrong").

attend the preliminary examination. However, because a question of fact exists regarding whether Greene's conduct fit the attempt language in MCL 750.122(6), the district court properly bound Greene over for trial.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

HOOD, J., concurred.

KELLY, J. (*dissenting.*) I respectfully dissent from the majority's conclusion that the evidence presented at the preliminary examination would allow a reasonable person to infer that defendant violated MCL 750.122(6). Instead, I would affirm the circuit court's ruling that the district court abused its discretion in binding defendant over for trial.

Although the evidence showed that defendant did not want Hughbanks to attend the preliminary examination and stated this desire along with some reasons designed to persuade Hughbanks not to obey the subpoena, it did not demonstrate that defendant attempted to impair her *ability* to appear.

MCL 750.122(6) provides:

> A person shall not willfully impede, interfere with, prevent, or obstruct or attempt to willfully impede, interfere with, prevent, or obstruct the ability of a witness to attend, testify, or provide information in or for a present or future official proceeding.

The majority held:

> We do not hold that a request, alone, not to attend a hearing or a stated desire that a witness not attend a hearing would be unlawful under MCL 750.122(6). Neither act

would necessarily affect a witness's *ability* to attend a hearing. Nor do we intend to imply that Greene would be convicted of this offense. Rather, in sum, the evidence presented at the preliminary examination would allow a reasonable person to infer that Greene knew Hughbanks would be attending the preliminary examination to provide testimony against him; Greene did not want Hughbanks to attend the hearing; Greene chose not to use bribery, threats or intimidation, or retaliation to dissuade Hughbanks from attending the hearing; Greene then willfully attempted to interfere with Hughbanks' intention to attend that hearing by telling her explicitly not the attend, playing to her feelings for him, and assuring her that the consequences would be minor or nonexistent; and this interference attempted to affect her ability to attend the hearing by impairing her ability to choose to do the right thing, which was to obey the subpoena. [*Ante* at 447 (emphasis in original).]

I find the majority's analysis somewhat strained and erroneous. The error is most evident in the majority's sentence: "Greene then willfully attempted to interfere with Hughbanks' intention to attend . . . this interference attempted to affect her ability to attend the hearing by impairing her ability to choose to do the right thing." Paring this sentence down, as I have here,[1] it becomes apparent that the majority essentially equates intention with ability. Thus, defendant's attempt to interfere with Hughbanks' *intention* to attend is erroneously equated with an attempt to impair her *ability* to attend.

As set forth by the majority, "ability" is defined as the "*power or capacity to do or act* physically, mentally, legally, morally, or financially." *Random House Webster's College Dictionary* (2d ed, 1997) (emphasis added). "Moral" is defined as "of, pertaining to, or

---

[1] Compare with full quote above.

concerned with the principles of right conduct or the distinction between right and wrong." *Id.* On the basis of these definitions, to render someone morally unable would render them powerless to choose between right and wrong. Contrary to the majority's belief, if a witness chooses to do wrong, she is not powerless or unable to choose. Rather, in exercising the ability to choose, she makes the wrong choice. Accordingly, in order to impair a witness's moral ability under subsection 6, a person would have to do something more than merely utter words of persuasion. In other words, subsection 6 is not directed to the result, i.e., that a witness chose not to fulfill her civic duty, but to the act of placing a barrier between the witness and the system.

Likewise, an attempt to impair ability would require an attempt to place a barrier between the witness and the system. An "attempt" has been defined as an overt act done with the intent to commit the crime, and which, except for the interference of some cause preventing the carrying out of the intent, would have resulted in the commission of the crime. *People v Konrad*, 449 Mich 263, 291; 536 NW2d 517 (1995) (Brickley, C.J., dissenting). Here, there was no overt act that, except for interference, would have impaired Hughbanks' ability to appear in court. Rather, defendant spoke persuasively with the intent to persuade, but his persuasion fell short of his desired goal.

The majority's interpretation of subsection 6 also renders other portions of the statute nugatory. When construing a statute, we presume that every word has meaning; our interpretation should not render any part of the statute nugatory. *People v Randolph*, 466 Mich 532, 558; 648 NW2d 164 (2002). Provisions must

be read in the context of the entire statute so as to produce a harmonious whole. *People v Williams*, 236 Mich App 610, 613; 601 NW2d 138 (1999). As the majority notes, the fact that "the Legislature chose *not* to place all these different types of tampering in the same subsection suggests that the Legislature considered them to be distinct." *Ante* at 438 (emphasis in original). It is incongruous that acts that do not satisfy the requirements of subsection 3, i.e., encouraged, influenced, or discouraged, but not by threats or intimidation, nonetheless satisfy the requirements of subsection 6. Had the Legislature intended to bar nonthreatening or nonintimidating encouragement, influence, or discouragement, it obviously would have excluded the threat or intimidation requirement from section 3.

In further support of this conclusion is the fact that the Legislature provided affirmative defenses to and exceptions from subsections 1 and 3, but did not apply them to subsection 6. MCL 750.122(4) and 750.122(5) provide:

> (4) It is an affirmative defense under subsections (1) and (3), for which the defendant has the burden of proof by a preponderance of the evidence, that the conduct consisted solely of lawful conduct and that the defendant's sole intention was to encourage, induce, or cause the other person to testify or provide evidence truthfully.
>
> (5) Subsections (1) and (3) do not apply to any of the following:
>
> (a) The lawful conduct of an attorney in the performance of his or her duties, such as advising a client.
>
> (b) The lawful conduct or communications of a person as permitted by statute or other lawful privilege.

It does not stand to reason that the Legislature intended to protect lawful conduct under subsections 1 and 3, but, under subsection 6, prohibit lawful conduct that was not intimidating or threatening, but constituted encouragement, discouragement, or influence. It is more likely that the Legislature understood the acts prohibited in subsection 6 to be so egregious that they could not be considered lawful in any circumstances. Clearly, mere influence, encouragement, or discouragement, without more, would not rise to this level.

Aside from disagreeing with the majority's statutory interpretation, I also find that subsection 6, as interpreted, raises the specter of a First Amendment violation. US Const, Am I; Const 1963, art 1, § 5. For example, an otherwise legal political protest may willfully influence or encourage a listener to choose not to attend or give information at an official proceeding involving the protested political issue. Although the protester did not place a barrier between the witness and the system, he could nonetheless be punished for his expression because it influenced a person to make the "wrong" choice. Obviously, I do not condone disobeying subpoenas. However, I believe that the judicial interpretation of subsection 6 should avoid the risk of unconstitutional application by limiting it to cases where a defendant's attempt to interfere with a witness's ability is more than merely uttering persuasive words with the hope or desire that the persuasion be effective.

In conclusion, a plain reading of MCL 750.122(6) clearly establishes that it is limited to prohibiting conduct that places, or attempts to place, a barrier between the witness and the system. After reviewing

the record, it is readily apparent that the evidence establishes nothing more than defendant's stated desire that Hughbanks not attend the preliminary examination. As the majority concedes, a "stated desire" standing alone is insufficient for the district court to find probable cause to believe that defendant violated MCL 750.122(6). I would affirm the circuit court's decision to quash the information.