*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOSEPH LEE BUSH, JR.,

        Defendant-Appellant.

UNPUBLISHED
December 23, 2024
9:20 AM

No. 365515
Ingham Circuit Court
LC No. 22-000726-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOSEPH LEE BUSH, JR.,

        Defendant-Appellant.

No. 365517
Ingham Circuit Court
LC No. 20-000240-FC

---

Before: BORRELLO, P.J., and MALDONADO and WALLACE, JJ.

PER CURIAM.

Defendant, Joseph Lee Bush, Jr., appeals as of right two judgments of sentence. A jury in a single consolidated trial convicted defendant of witness interference, MCL 750.122(7)(b); conspiracy to commit witness interference, MCL 750.122(7)(b) and MCL 750.157a; first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a); MCL 750.520b(2)(b) (sexual penetration involving victim less than 13 years old and perpetrator at least 17 years old); and two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a); MCL 750.520c(2)(b) (sexual contact involving victim less than 13 years old and perpetrator at least 17 years old). The trial court sentenced defendant to two terms of 23 to 120 months' imprisonment for witness interference and conspiracy to commit witness interference, to 300 to 480 months' imprisonment for CSC-I, and to two terms of 71 to 180 months' imprisonment for the two counts of CSC-II. The court ordered the sentences in each case to be served concurrently with each other but

-1-

consecutively to the sentences for witness interference and conspiracy to commit witness interference. We affirm.

Defendant's CSC convictions arose from his sexual abuse of his stepson, JT, who grew up believing that defendant was his biological father. The witness-interference convictions arose from a letter defendant sent from jail to his ex-wife, AS, who is JT's mother. In the letter, defendant attempted to get AS to cease cooperating with the authorities. On appeal, defendant contends that (1) the prosecutor failed to prove venue for the CSC convictions because there was insufficient evidence that the assaults took place at a house on Harkson Dr. in Ingham County as opposed to another house, on Airport Rd. in Clinton County, where the family used to live; (2) the prosecutor presented insufficient evidence to support the witness-interference convictions; (3) the trial court erred by allowing the admission into evidence of other bad acts by defendant; and (4) the trial court insufficiently articulated its basis for consecutive sentencing.

## I. VENUE

Defendant contends that his CSC convictions must be vacated on the basis of a lack of proper venue because the prosecutor did not demonstrate that the offenses took place at the Harkson Dr. house in Ingham County. "A trial court's determination regarding the existence of venue in a criminal prosecution is reviewed de novo." *People v Houthoofd*, 487 Mich 568, 579; 790 NW2d 315 (2010).

"The general venue rule is that defendants should be tried in the county where the crime was committed." *Id*. "[E]xcept as the [L]egislature for the furtherance of justice has otherwise provided reasonably and within the requirements of due process, the trial should be by a jury of the county or city where the offense was committed." *Id*. (quotation marks and citation omitted).

A venue error, however, is not of constitutional magnitude. *Id*. at 588-590, 593. The *Houthoofd* Court stated:

> [B]ecause a venue error is not a constitutional structural error, this matter is subject to a harmless error analysis under MCL 769.26. In this case, defendant was not deprived of his due process right to a fair trial before an impartial jury and there has been no miscarriage of justice. Moreover, MCL 600.1645 explicitly provides that no judgment shall be voided solely on the basis of improper venue. [*Id*. at 593-594.]

MCL 600.1645 states that "[n]o order, judgment, or decree shall be void or voidable solely on the ground that there was improper venue." MCL 769.26 states:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

The prosecutor adequately demonstrated venue for the two counts of CSC-II. The Airport Rd. house is in Clinton County and the Harkson Dr. house is in East Lansing, in Ingham County. Defendant himself testified that the Harkson Dr. house was white and also said that, in the Airport Rd. house, all the bedrooms were on the main level. JT testified that, right before moving to a trailer park, the family lived on Airport Rd. in a house with just a ground floor and a basement. JT said that before living in the house on Airport Rd., the family lived in a white house with two stories and a basement that was in East Lansing. JT said that, "at the white house" with an upstairs and a downstairs, a "few" incidents happened. JT said that the assaults happened "up in [defendant's] room, which is like, all the way up in the upstairs," or they would happen "in [JT's] room or the bathroom because [JT's] room was right next to the bathroom." JT said that, upstairs in defendant's bedroom, defendant yelled at him and made him "drop [his] pants," and then he "rubbed" JT's penis and testicles. JT said that, another time in this white house, he went into the bathroom and defendant joined him there, put a condom on his (defendant's) penis, and "rubbed around [JT's] butthole," "like in [JT's] butt crack" with his penis. Importantly, JT made a distinction between "the white house [and] . . . Airport."

All this evidence was sufficient to show venue in Ingham County for the two CSC-II incidents.

As for the oral sex incident comprising the CSC-I charge, JT said that this happened "either in the white house or in Airport." Two separate times, JT said that he thought it happened at the Airport Rd. house. He stated, "I'm pretty sure it was in the Airport [house]." He said that he was eight or nine years old at the time. The prosecutor contends that venue was proven for the oral sex incident because evidence showed that the family lived at the Harkson Dr. house "[c]lose to three years," from 2015 to 2018, i.e., during a time when JT was eight and nine. AS said that the family moved to the Harkson Dr. house in 2014 or 2015 and lived there until 2018. They then moved into the Airport Rd. house, lived there for less than a full year, and subsequently moved to the trailer park, still in 2018.

We do not agree with the prosecutor's assertion. The evidence showed that the family likely lived at the Harkson Rd. house *and* the Airport Rd. house when JT was eight and nine. In addition, JT was "pretty sure" the oral sex happened at the Airport Rd. house. However, as noted, the venue issue is subject to harmless-error review. In *Houthoofd*, 487 Mich at 590, the Court stated:

> [D]efendant has proffered no argument that it is more probable than not that the outcome of the trial would have been different had he been prosecuted in another county, nor has he shown that he was deprived of a fair trial by an impartial jury. . . . Defendant received a fair trial before an impartial jury, and it cannot be argued that there was a miscarriage of justice simply because the trial was in Saginaw County. Therefore, defendant has not met his burden of proof to establish that, more probably than not, there was a miscarriage of justice by trying him . . . in Saginaw County.

The same holds true here. There is simply no basis to conclude that a miscarriage of justice occurred by virtue of the trial's being held in Ingham County. Considering the evidence that was

introduced in this matter, it would not be reasonable to conclude that the outcome would have been different if the CSC-I charge had been tried in Clinton County, instead of Ingham County.

Defendant relies upon *People v Fisher*, 220 Mich App 133, 145-146; 559 NW2d 318 (1996), but *Fisher* does not support defendant's position. *Fisher* involved the interpretation of MCL 762.8, a venue statute concerning a felony consisting of more than one act. Neither party in the present case has argued that MCL 762.8 is applicable here. Regardless, *Fisher* was decided before the Michigan Supreme Court issued *Houthoofd* in which it overruled *Fisher* as it pertained to the interpretation of MCL 762.8. The Court in *Houthoofd* held that an error in venue is subject to harmless error analysis, requiring a miscarriage of justice to warrant reversal, yet defendant fails to present any argument as to why the error should not be deemed to be harmless and defendant fails to argue that a miscarriage of justice occurred in this caser.

For these reasons, reversal is not warranted.

## II. WITNESS INTERFERENCE

Defendant contends that the prosecutor presented insufficient evidence to support the witness-interference convictions. "This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction." *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014).

The information alleged that defendant "did willfully impede, interfere with, prevent, or obstruct or attempt to willfully impede, interfere with, prevent, or obstruct the ability of a witness to attend, testify, or provide information in or for a criminal case. . ." It also alleged that defendant conspired with various individuals to do the aforementioned. The language of the information corresponded to MCL 750.122(6), which states that "[a] person shall not willfully impede, interfere with, prevent, or obstruct or attempt to willfully impede, interfere with, prevent, or obstruct the ability of a witness to attend, testify, or provide information in or for a present or future official proceeding." The jury was instructed about whether defendant intended to "impede, interfere with, prevent, or obstruct" JT or AS from "attending, testifying at, or providing information at the official proceeding."

Defendant focuses his appellate argument on MCL 750.122(3), which deals with a "threat or intimidation[.]" But that is simply not the subsection under with defendant was charged. See *People v Greene*, 255 Mich App 426, 438; 661 NW2d 616 (2003) (discussing the different subsections and how they differ). Accordingly, his entire appellate argument as it pertains to this issue, which focuses largely on intimidation, is inapposite. Defendant argues that common-law principles should be applied, but *Greene* indicates that the statutory language, not common law, controls. *Id*. at 438-439 & n 6. The Court stated, "[W]e are not persuaded that, contrary to the plain language in the statute but as Greene argues, MCL 750.122(6) follows any common-law approach to obstruction of justice that would require threats, intimidation, or physical interference as elements of this offense." *Id*. at 438 n 6. The Court said that "subsection 6 makes illegal *any* act or attempt, no matter its form, to keep the witness from attending, testifying, or providing information in or for a present or future official proceeding by affecting the witness's ability to do so." *Id*. at 441 (brackets omitted). The *Greene* Court went on:

In summary, to prove that a defendant has violated MCL 750.122(6), applying the explanations of various terms provided in this opinion, the prosecutor must prove that the defendant (1) committed or attempted to commit (2) an act that did not consist of bribery, threats or intimidation, or retaliation as defined in MCL 750.122 and applicable case law, (3) but was any act or attempt that was done willfully (4) to impede, interfere with, prevent, or obstruct (5) a witness's ability (6) to attend, testify, or provide information in or for a present or future official proceeding (7) having the knowledge or the reason to know that the person subjected to the interference could be a witness at any official proceeding. [*Id*. at 442-443.]

In reviewing a sufficiency argument, this Court "review[s] the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution had proved the crime's elements beyond a reasonable doubt." *Lane*, 308 Mich App at 57.

The letter defendant sent to AS could reasonably be interpreted as a willful attempt to interfere with JT's ability to testify at the trial because, in the letter, defendant said to AS, "I think you know all you have to i[s] not respond to them people" (i.e., the prosecutor and the court system), said that "[w]e can change this situation before it ruins" the lives of defendant's and AS's children, and told AS that he did not "want [the children] to hate" her. AS testified that she perceived the letter as threatening and intimidating. As a minor, JT was dependent on AS for having the ability to get to court, and defendant was attempting to get AS to stop cooperating in the case.[1] In addition, telephone calls from jail in which defendant discussed the sending of the letter and obtained assistance from others in doing so amply proved that defendant conspired with others to get the letter to AS.

Given the circumstances, reversal based on this issue is unwarranted.

### III. OTHER-ACTS EVIDENCE

Defendant contends that the trial court improperly allowed the prosecutor to introduce evidence of other bad acts, specifically, acts of domestic violence involving AS, into the trial. The admission of evidence is reviewed for an abuse of discretion. *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014). "An abuse of discretion occurs when trial court's decision is outside the range of principled outcomes." *Id*.

Before trial, the prosecutor filed a motion to allow admission of other bad acts by defendant. Although the prosecutor was seeking to admit other acts against AS and JT, on appeal defendant argues only about "alleged other acts of domestic violence against [AS]." The prosecutor's initial theory of admissibility for this evidence was MCL 768.27b, although she later mentioned "res gestae" and MRE 404(b).

---

[1] AS testified that she was the person who drove JT to court.

The court disallowed evidence of defendant's alleged *sexual* bad acts against AS, finding that it would be "more prejudicial than probative." The court said that other acts of domestic violence against AS were admissible under MRE 404(b) to show "the opportunity to create control of the victim" and to prove how defendant "was able to commit these crimes against this victim and why the child did not disclose immediately." The court said that the evidence of other acts of domestic violence was "substantially probative in that it does allow the jury to understand the dynamic of the household and the control, allegedly, that the [d]efendant had of the entire household." It said that MRE 403 did not bar admission of the evidence.

Defendant argues about "res gestae" evidence on appeal, but a "res gestae" theory was not relied upon by the trial court to admit the particular evidence being challenged on appeal. In addition, MCL 768.27b states, in part:

> (1) Except as provided in subsection (4), in a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.
>
> * * *
>
> (6) As used in this section:
>
> (a) "Domestic violence" or "offense involving domestic violence" means an occurrence of 1 or more of the following acts by a person that is not an act of self-defense:
>
> (*i*) Causing or attempting to cause physical or mental harm to a family or household member.
>
> (*ii*) Placing a family or household member in fear of physical or mental harm.
>
> * * *
>
> (*iv*) Engaging in activity toward a family or household member that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested.
>
> (b) "Family or household member" means any of the following:
>
> (*i*) A spouse or former spouse.
>
> * * *
>
> (*iv*) An individual with whom the person has or has had a dating relationship. As used in this subparagraph, "dating relationship" means frequent,

intimate associations primarily characterized by the expectation of affectional involvement. . . .

Defendant contends that the court should have excluded the evidence on the basis of irrelevance and also mentions the language of MRE 403, which states that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The propensity inference of the evidence is to be weighed in favor of its probative value, not its prejudicial effect. See *People v Watkins*, 491 Mich 450, 487; 818 NW2d 450 (2012) (discussing MCL 768.27a). As stated in *People v Cameron*, 291 Mich App 599, 609; 806 NW2d 371 (2011), "The language of MCL 768.27b clearly indicates that trial courts have discretion to admit relevant evidence of other domestic assaults to prove any issue, even the character of the accused, if the evidence meets the standard of MRE 403." (Quotation marks and citation omitted.)

Defendant argues that the other acts would allow the jury to speculate about his nature, but the statute *allows* other acts to be used to prove the character of the accused. *Id.* The other acts tended to show defendant's willingness to abuse, intimidate, and exert control over family members. In addition, the evidence was very probative in that it helped to explain why JT waited so long to disclose the sexual abuse. JT testified repeatedly about his fear of defendant and said that, when he finally told his mother about the incidents, he was afraid that defendant would "come back" and "kill us." The domestic violence against AS painted an overall picture of the family dynamics that helped to explain how defendant was able to continue to abuse JT for an extended period. The other acts gave a fuller picture of defendant's history and shed light on the likelihood of defendant's having committed the charged crimes, *Cameron*, 291 Mich App at 610 – and no abuse of discretion is apparent with regard to the trial court's ruling. Although the trial court did not explicitly rely on MCL 768.27b, this Court should affirm when the correct result has been reached. See *People v Watson*, 245 Mich App 572, 582; 629 NW2d 411 (2001). Reversal based on this issue is unwarranted.

## IV.  SENTENCING

Defendant contends that the trial court did not sufficiently articulate its reasons for imposing a consecutive sentence. The decision to impose consecutive sentencing is reviewed for an abuse of discretion. *People v Norfleet*, 317 Mich App 649, 664; 897 NW2d 195 (2016).

MCL 768.7b(2) states, in pertinent part:

Beginning January 1, 1992, if a person who has been charged with a felony, pending the disposition of the charge, commits a subsequent offense that is a felony, upon conviction of the subsequent offense or acceptance of a plea of guilty, guilty but mentally ill, or nolo contendere to the subsequent offense, the following shall apply:

(a) Unless the subsequent offense is a major controlled substance offense, the sentences imposed for the prior charged offense and the subsequent offense may run consecutively.

We conclude that the trial court did not, contrary to defendant's argument, run afoul of *Norfleet* wherein this Court discussed articulation requirements for consecutive sentencing. See *Norfleet*, 317 Mich App at 666.

The court in the instant case, after going through the various sentencing considerations and imposing sentence, stated:

> I have taken into consideration the arguments on both sides with regard to this, but it is my view that it makes no sense in terms of sentencing for this type of crime for there to be concurrent sentences served with the underlying crime for which he tried to intimidate or interfere with the witness because that would be tantamount to no punishment and deterrence is part of the consideration for sentencing.
>
> It is, I think, extremely important that we send a message that people should be deterred from committing this kind of conduct in their underlying cases by indicating that they are going to serve an additional sentence, an additional penalty for engaging in witness intimidation or interference to try to undermine the prosecution of the underlying crime.

Defendant argues on appeal that the trial court ran afoul of *Norfleet* by failing to give particularized reasons for the consecutive sentencing. But the present case is distinguishable from *Norfleet*, wherein the Court remanded the case for further articulation. See *id*. First, in *Norfleet*, this Court was concerned that the trial court imposed consecutive sentences multiple times without justifying each instance. *Id*. at 657, 666. Here, only one imposition of consecutive sentencing is at issue on appeal. Moreover, the court in the present case did, in fact, provide reasoning for its imposition of the consecutive sentencing. It noted that deterrence from witness interference in pending cases was a prevailing consideration and also noted that it had taken into consideration the prosecutor's arguments, which involved defendant's intimidation and violence against his family. A remand is unnecessary.

Affirmed.

/s/ Stephen L. Borrello
/s/ Allie Greenleaf Maldonado
/s/ Randy J. Wallace