*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LESTER T. JENNINGS-BUSH,

        Defendant-Appellant.

UNPUBLISHED
April 11, 2024

No. 362031
St. Clair Circuit Court
LC No. 21-001520-FC

Before: CAVANAGH, P.J., and K. F. KELLY and RICK, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of one count each of torture, unlawful imprisonment, possession of less than 50 grams of a controlled substance, felonious assault, felon in possession of a firearm, felon in possession of ammunition ("felon-in-possession"), witness intimidation, and two counts of possession of a firearm during the commission of a felony ("felony-firearm"), second offense. The trial court sentenced defendant as a fourth-offense habitual offender to concurrent prison terms of 600 to 900 months each for the torture and unlawful-imprisonment convictions, 240 to 900 months each for the controlled substance and felon-in-possession convictions, 120 to 180 months for the felonious assault conviction, and 120 to 900 months for the witness intimidation conviction, to be served consecutively to concurrent five-year prison terms for the felony-firearm convictions. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Defendant's convictions arise from events on July 10 and 11, 2021, during which the victim, Will Davis, was held captive in the basement of a house in Port Huron. The victim reported that while his hands were bound behind his back with a cable, he was beaten with a handgun and waterboarded for several hours by defendant and another man, Mathews Hampton, allegedly because the victim owed defendant money. The victim was able to escape from the house in the middle of the night and flee to a nearby home where he told the homeowner, Aimee Worley, and her friend, Jonathan Robert McMullin, what happened and to call the police.

Mercedes Biland, an emergency medical technician ("EMT"), responded to Worley's house to administer aid. The victim explained the nature and cause of his injuries to her, but he

-1-

refused to go to a hospital. After the police arrived, they obtained a warrant to search the home where the victim had been held, which was behind Worley's house and owned by defendant's girlfriend, Bobbi Jo Abrego. The police found items in the basement consistent with the victim's account of what happened there, and also recovered three firearms, ammunition, and a bag of individually wrapped packages of cocaine. The victim did not appear for trial, but his accounts of the events as related to Biland, Worley, and McMullin were introduced at trial.

Defendant was convicted by a jury of torture, MCL 750.85; unlawful imprisonment, MCL 750.349b; possession of less than 50 grams of a controlled substance, MCL 333.7401(2)(a)(*iv*); felonious assault, MLC 750.82; felon in possession of a firearm, MCL 750.224f(1); felon in possession of ammunition, MCL 750.224f(6); witness intimidation, MCL 750.1227b; and two counts of possession of a firearm during the commission of a felony, second offense, MCL 750.227b. Defendant was sentenced as previously noted, and this appeal followed.

## II. ADMISSIBILITY OF OUT-OF-COURT STATEMENTS

Defendant first argues that the victim's statements to the neighbors and first responders were inadmissible hearsay and their admission violated his constitutional right of confrontation. We disagree.

### A. STANDARDS OF REVIEW

We review the trial court's decision to admit this evidence for an abuse of discretion. *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). "An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes." *People v Olney*, 327 Mich App 319, 325; 933 NW2d 744 (2019) (quotation marks and citation omitted). Defendant only objected to the admission of Biland's report at trial, and did not object to the admission of the victim's other statements and has, therefore, failed to preserve arguments related to them for appeal. See *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001) ("To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal."). Unpreserved claims of error are reviewed for plain error affecting the defendant's substantial rights. *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006). "Under the plain-error rule, defendant bears the burden to prove (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights, i.e., prejudiced defendant by affecting the outcome of the proceedings." *People v Anderson*, 341 Mich App 272, 279; 989 NW2d 8322 (2022).

### B. ANALYSIS

" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c).[1] A

---

[1] The Michigan Rules of Evidence were substantially amended and restyled on September 20, 2023, effective January 1, 2024, to remain consistent with the Federal Rules of Evidence. See 512 Mich lxiii (2023). We will refer to the rules in effect at the time of defendant's trial, which occurred before the amendments.

"statement" is an oral assertion intended as an assertion. MRE 801(a). Hearsay is not admissible unless an exception applies under the Michigan Rules of Evidence. See MRE 802.

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . .to be confronted with the witnesses against him[.]" US Const, Am VI. However, this "right is implicated only for 'testimonial' evidence, because the Confrontation Clause applies to 'witnesses' against the accused—in other words, those who 'bear testimony.' " *People v Bruner*, 501 Mich 220, 227; 912 NW2d 514 (2018), quoting *Crawford v Washington*, 541 US 36, 51; 124 S Ct 1354; 158 L Ed 2d 177 (2004). "Testimony is a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id*. (quotation marks and citation omitted). "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Ohio v Clark*, 576 US 237, 244; 135 S Ct 2173; 192 L Ed 2d 306 (2015) (citation omitted). "[T]he question is whether, in light of all the circumstances, viewed objectively, the primary purpose of the conversation was to create an out-of-court substitute for trial testimony." *Id.* at 245 (quotation marks and citation omitted).

## 1. EMT REPORT

Defendant first argues that the trial court abused its discretion by admitting Biland's report of her medical treatment of the victim, which included the victim's explanations for the causes of his injuries. Biland's report stated, in relevant part:

> Alpha Central Unit 148 arrived on location with Port Huron PD to find a 26-year-old male with a chief complaint of patient states he was kidnapped and hogtied, pistol whipped, dragged across the floor and hit in the face possibly with a fist. An A less (Phonetic) assessment was performed by Medic Mosher and it noted the patient was A and O times four answering appropriately. Patient very shaken up. The patient complaints started on 7/11/21 when the patient was kidnapped and placed in a basement. Patient states he escaped and ran to a house that the people took him in for safety. EMS being called for a quick check out of injuries.

Although the victim's statements to Biland are hearsay, the trial court admitted the statements under MRE 803(4), which provides an exception to the hearsay rule for statements "made for purposes of medical treatment or medical diagnosis in connection with treatment," including statements that describe the cause or external source of symptoms, pain, or sensations as reasonably necessary to such diagnosis or treatment. The "rationale for MRE 803(4) is the existence of (1) the self-interested motivation to speak the truth to treating physicians in order to receive proper medical care, and (2) the reasonable necessity of the statement to the diagnosis and treatment of the patient." *People v Duenaz*, 306 Mich App 85, 95; 854 NW2d 531 (2014) (citation omitted).

Biland, an EMT, arrived at the scene for the purpose of administering medical aid. In the process of administering aid, the victim described his injuries and how they occurred. His statements explaining the origin of his injuries were reasonably necessary to a diagnosis of his condition and a determination of his need for medical treatment. See *id*. Thus, the statements in the report fall squarely within the scope of MRE 803(4), and the trial court did not abuse its discretion by admitting it.

Whether the victim's statements to Biland violated defendant's right of confrontation depends on "whether, in light of all the circumstances, viewed objectively, the primary purpose of the conversation was to create an out-of-court substitute for trial testimony." *Clark*, 576 US at 245 (quotation marks and citation omitted). Biland testified that her duties consisted of checking out patients, providing treatment, and transporting injured patients to the hospital. In light of all the circumstances, the primary purpose of the conversation between Biland and the victim was to evaluate the victim's condition and determine his need for medical treatment, not "to establish or prove past events potentially relevant to later criminal prosecution." *Id.* at 244. Therefore, the victim's statements to Biland do not qualify as testimonial. Accordingly, the admission of Biland's report and related testimony regarding the victim's statements did not violate defendant's right of confrontation.

## 2. WORLEY AND MCMULLIN

Defendant also argues that the victim's statements to Worley and McMullin were inadmissible hearsay. Immediately after the victim escaped from Abrego's basement, he went to Worley's house and described what happened to Worley and McMullin. The victim's statements to them were admissible as present sense impressions and excited utterances. See MRE 803(1) and (2). A present sense impression is a statement "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." MRE 803(1). This rule "allows for the admission of a hearsay statement if three requirements are met: (1) the statement must provide an explanation or description of the perceived event, (2) the declarant must have personally perceived the event, and (3) the explanation or description must have been made at a time 'substantially contemporaneous' with the event." *People v Chelmicki*, 305 Mich App 58, 63; 850 NW2d 612 (2014) (citation omitted).

An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement that caused the event or condition." MRE 803(2). This exception "allows hearsay testimony that would otherwise be excluded because it is perceived that a person who is still under the sway of excitement precipitated by an external startling event will not have the reflective capacity essential for fabrication so that any utterance will be spontaneous and trustworthy." *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998) (quotation marks and citation omitted). The requirements for an excited utterance are: (1) that there be a startling event, and (2) that the resulting statement be made while under the excitement caused by the event. *Id.*

Concerning the present sense impression exception, the victim described the events that he personally witnessed as the victim of the described assault. In addition, the victim's statements were made substantially contemporaneous with the events that he described. Indeed, Worley and McMullin observed that the victim was soaking wet, visibly shaking like he was cold, had a black

eye, and had bruised and swollen wrists, consistent with having been bound. Both Worley and McMullin described the victim as being very frightened and stating that he was afraid for his and his family's lives. This testimony established that the victim's statements to Worley and McMullin were made "substantially contemporaneous" with his escape from imprisonment. Therefore, the statements were admissible under MRE 803(1), and the trial court did not plainly err by admitting them.

The evidence also clearly supported the admissibility of the statements as excited utterances. See MRE 803(2). The victim appeared at the house of a stranger, Worley, at approximately 3:00 a.m., asking for help. He was soaking wet, had visible injuries, and appeared very frightened and was shaking. The victim's physical appearance and condition, and Worley's and McMullin's testimony that the victim cried as he spoke, appeared terrified and frantic, and was visibly shaking, demonstrated that the victim was still under the stress or excitement caused by the event. Accordingly, defendant has not demonstrated that the trial court plainly erred when it admitted the victim's statements to Worley and McMullin.

We also disagree that the victim's statements to Worley and McMullin were testimonial and violated his constitutional right of confrontation. Worley and McMullin both testified that when they opened the door in response to the victim's knocks, he appeared to be very frightened and needed help. The victim urged them to quickly call 911 and explained what happened. In light of the objective circumstances, the primary purpose of the statements made by the victim to attend to an emergent situation, not "to create an out-of-court substitute for trial testimony." *Clark*, 576 US at 24. Accordingly, the Confrontation Clause did not bar the admission of the victim's statements to Worley and McMullin.

### 3. OFFICER REED

Defendant also argues that testimony by Officer Reed, describing various statements made by the victim was inadmissible hearsay and violated his constitutional right of confrontation. Officer Reed testified that he spoke to the victim at the police station about an hour or two after the victim initially made contact with law enforcement. We agree that the victim's statements to Officer Reed were testimonial because they were made in response to Officer Reed's questioning concerning "possible criminal conduct that had occurred in the past, rather than an ongoing situation." See *People v Dendel*, 289 Mich App 445, 453-454; 797 NW2d 645 (2010). Because the victim's statements to Reed were testimonial, and defendant never had an opportunity to cross-examine the victim, the admission of those statements at trial violated defendant's constitutional right of confrontation. *Id.*

However, because defendant did not object to this testimony at trial, he must also demonstrate that the error affected his substantial rights. See *Pipes*, 475 Mich at 274; *People v Walker*, 273 Mich App 56, 66; 728 NW2d 902 (2006). To obtain relief under plain error review, the defendant must show that the error affected the outcome of the proceedings. *Anderson*, 341 Mich App at 279. Defendant has the burden of demonstrating that he was prejudiced by the plain error. *Id.*

During his testimony, Officer Reed attempted to avoid offering testimony directly relating the victim's statements. To the extent that there were some instances when Officer Reed provided

testimony that referred to various statements made by the victim, it was not done with a primary purpose of establishing the truth of the statements. Moreover, the limited testimony was cumulative of properly admitted testimony from Biland, Worley, and McMullin regarding the victim's statements to them. Abrego's testimony also placed the victim at her house on the day of the assault, and established the relationship between the victim and defendant. Defendant does not identify any specific statements by the victim to Officer Reed that he claims were prejudicial, but merely complains in generalities that Officer Reed's testimony violated defendant's confrontation rights. See *Shepherd Montessori Ctr Milan v Ann Arbor Twp*, 259 Mich App 315, 344; 675 NW2d 271 (2003) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.") (quotation marks and citation omitted). Under these circumstances, defendant has not met his burden of demonstrating that he was prejudiced by any error involving the introduction of the victim's statements to Officer Reed. *Anderson*, 341 Mich App at 279; *Walker*, 273 Mich App at 66.

## 4. INEFFECTIVE ASSISTANCE

Defendant also argues in the alternative that defense counsel was ineffective for failing to object to the aforementioned testimony regarding the victim's out-of-court statements. We disagree.

To establish ineffective assistance of counsel, defendant must show (1) that trial counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's errors, a different outcome would have resulted." *People v Jackson*, 292 Mich App 583, 600-601; 808 NW2d 541 (2011). In examining whether trial counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012).

As explained, Biland's testimony regarding the victim's statements to her while she was evaluating him for medical treatment was admissible under MRE 803(4), and the admission of those statements did not violate defendant's right of confrontation. Similarly, the victim's statements to Worley and McMullin were admissible under either MRE 803(1) and (2), and also did not violate defendant's right of confrontation. Thus, any objection to those statements as either inadmissible hearsay or on constitutional grounds would have been futile, and defense counsel is not ineffective for failing to make a futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Finally, to the extent that it was objectively unreasonable for defense counsel not to object to Officer Reed's testimony regarding some of the victim's statements on the ground that admission of the statements violated defendant's constitutional right of confrontation, for the reasons explained earlier, defendant has not demonstrated a reasonable probability that counsel's failure to object to the statements affected the outcome of defendant's trial. Accordingly, defendant cannot establish a claim of ineffective assistance of counsel.

## III. OTHER-ACTS EVIDENCE

Next, defendant argues the trial court abused its discretion when it permitted Abrego to testify that defendant assaulted her two days before he assaulted the victim. Although we agree that the trial court abused its discretion by admitting this evidence, the error was harmless.

## A. STANDARDS OF REVIEW

We review the trial court's decision to admit this evidence for an abuse of discretion. *Denson*, 500 Mich at 396. "An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes." *Olney*, 327 Mich App at 325 (quotation marks and citation omitted).

## B. ANALYSIS

Under MRE 404(b)(1), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character or a person in order to show action in conformity therewith." Such evidence is admissible, however, for other purposes, "such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs or acts are contemporaneous with or prior or subsequent to the conduct at issue in this case." *Id*. "Thus, MRE 404(b) is a rule of inclusion, meaning it permits the admission of any logically relevant evidence *even if* it also reflects on a defendant's character, so long as the evidence is not relevant *solely* to the defendant's character or criminal propensity." *People v Spaulding*, 332 Mich App 638, 649; 957 NW2d 843 (2020) (quotation marks and citation omitted).

Other-acts-evidence is admissible under MRE 404(b)(1) if the following requirements are met:

> First, that the evidence be proffered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993).]

The prosecution bears the burden of establishing a proper noncharacter purpose for the admission of other-acts evidence. *Denson*, 500 Mich at 398.

In the trial court, the prosecutor argued that evidence of defendant's assault on Abrego was admissible to establish a pattern of conduct exhibited by defendant in response to feeling disrespected. The prosecutor argued that defendant assaulted Abrego because defendant felt that Abrego had disrespected him, which was probative of the prosecutor's theory in this case that defendant assaulted the victim because he felt that the victim's failure to repay defendant was an act of disrespect.

Abrego's testimony of defendant's prior assault of her, however, did not establish a pattern of conduct for purposes of MRE 404(b). Abrego testified that defendant assaulted her because he felt that she had disrespected him. But Abrego never testified that defendant felt that the victim

had disrespected him. Rather, Abrego testified that the victim owed defendant money. Thus, the circumstances that motivated the two assaults were different, and not similarly predicated on "disrespect." The trial court abused its discretion by admitting the evidence, but the error was harmless.

A preserved, nonconstitutional error is subject to harmless-error review under MCL 769.26:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

Defendant has the burden of establishing a miscarriage of justice under a "more probable than not" standard. *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). The focus of the inquiry is "on the nature of the error" and "its effect in light of the weight and strength of the untainted evidence." *Denson*, 500 Mich at 409-410 (quotation marks and citation omitted).

The probative force of Abrego's other-acts testimony was its tendency to show defendant's willingness to commit an assault. There was significant other evidence that corroborated not only the victim's account of having been assaulted by defendant, but also the manner in which the assaultive conduct was carried out. The victim described being hogtied and waterboarded, and Worley and McMullin testified that the victim was soaking wet, cold, and very frightened when he arrived at Worley's house. Biland, Worley, and McMullin also noticed bruising on the victim's face and his wrists were swollen and bruised. Investigators also recovered a nine-millimeter handgun that contained DNA from defendant and the victim. Considering the weight and strength of the properly admitted evidence, defendant has failed to show that it would be more probable than not that the outcome of the trial would have been different had Abrego's other-acts testimony not been admitted. See *Thorpe*, 504 Mich at 252. Accordingly, any error in admitting this evidence was harmless.

## IV. SUFFICIENCY OF THE EVIDENCE

Defendant also argues that the prosecutor failed to present sufficient evidence to support any of his convictions. We disagree.

## A. STANDARDS OF REVIEW

"In determining whether sufficient evidence exists to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (citation omitted). This Court employs a deferential standard of review because a "reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict." *Id.* (emphasis in original) (citation omitted). "It is for the trier of fact, *not the appellate court*, to determine what inferences

may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Id*. (emphasis in original) (citation omitted).

## B. ANALYSIS

"For a jury to find a defendant guilty of a charged crime, the prosecution must demonstrate that the defendant is guilty of every element of a crime beyond a reasonable doubt." *People v Posey*, 512 Mich 317, 323; 1 NW2d 101 (2023). "Conflicting evidence and disputed facts are to be resolved by the trier of fact. Minimal circumstantial evidence and reasonable inferences can sufficiently prove the defendant's state of mind, knowledge, or intent." *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019) (citation omitted). In addition, "[c]ircumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

### 1. TORTURE

Turning first to defendant's torture conviction, defendant argues that the evidence did not prove that the victim was held within defendant's care or custody, that defendant intended to cause cruel or extreme physical or mental pain and suffering, or that the victim actually suffered a great bodily injury or severe mental pain or suffering. The elements of torture are (1) the intent to cause cruel or extreme physical or mental pain and suffering, (2) the infliction of great bodily injury or severe mental pain or suffering, and (3) the victim is within the person's custody or physical control. MCL 750.85.

Although the victim described being physically assaulted, we agree there was no evidence that defendant caused a "great bodily injury" within the meaning of the statute. See MCL 75.85(2)(c)(*ii*) (defining "great bodily injury," in relevant part, as "[o]ne or more of the following conditions: internal injury, poisoning, serious burns or scalding, severe cuts, or multiple puncture wounds."). Therefore, defendant must have caused "a mental injury that result[ed] in a substantial alteration of mental functioning that [was] manifested in a visibly demonstrable manner . . . ." MCL 750.85(2)(d). Here, the victim told Worley and McMullin that, in addition to being physically assaulted, he was "waterboarded" while his hands were tied behind his back. Detective William Sharp explained that waterboarding is an interrogation technique whereby a wet cloth is placed over a person's face and then water is poured over the cloth to simulate the sensation of drowning. According to both Worley and McMullin, when the victim arrived at their house and asked for help, he was soaking wet, visibly frightened, and shaking. The victim stated that he thought he was going to die and he also expressed worry and concern for the safety of his family members. This evidence permitted the jury to find beyond a reasonable doubt that defendant's conduct was "cruel" and was intended to cause, and did cause, severe mental pain and suffering. See *People v Lymon*, 342 Mich App 46, 59-60; 993 NW2d 24 (2022).

### 2. UNLAWFUL IMPRISONMENT

With respect to defendant's unlawful imprisonment conviction, he argues there was insufficient evidence to support a finding that he secretly confined or restrained the victim. Defendant was convicted of violating MCL 750.349b, which states that an individual is guilty of

unlawful imprisonment if the individual "knowingly restrains another person" under the following circumstances:

> (a) The person is restrained by means of a weapon or dangerous instrument.
>
> (b) The restrained person was secretly confined.
>
> (c) The person was restrained to facilitate the commission of another felony or to facilitate flight after commission of another felony. [MCL 750.349b(1).]

To "restrain" means "to forcibly restrict a person's movements or to forcibly confine the person so as to interfere with that person's liberty without that person's consent or without lawful authority." MCL 750.349b(3)(a).

The jury heard testimony from Worley and McMullin that the victim was held in Abrego's basement for seven hours, during which he was bound, waterboarded, and physically assaulted by defendant. McMullin and Worley observed that the victim's wrists were bruised and swollen, which a jury could reasonably find supported the victim's claim that he had been physically restrained. Additionally, Detectives Sharp and Frazier found cords and a dog chain in the basement consistent with the victim's description. Thus, the victim's description of being assaulted and tortured by defendant in the basement while his hands were bound behind his back, and the discovery of evidence in the basement consistent with this account, was sufficient to enable the jury to find beyond a reasonable doubt that defendant knowingly restrained the victim by using a weapon in the commission of the crime of torture, a felony. See MCL 750.349b(1).

### 3. POSSESSION OF CONTROLLED SUBSTANCE

Defendant concedes that the police found less than 50 grams of cocaine in his house, but argues that there was insufficient evidence that he constructively possessed the cocaine. To support a conviction of possession with intent to deliver less than 50 grams of cocaine, the prosecutor must prove that defendant possessed less than 50 grams of cocaine and that the defendant intended to deliver the cocaine to another person. *People v Wolfe*, 440 Mich 508, 519; 489 NW2d 748 (1992); MCL 333.7401(2)(a)(iv). Possession is the "dominion or right of control over the drug with knowledge of its presence and character." *People v Cohen*, 294 Mich App 70, 76; 816 NW2d 474 (2011) (quotation marks and citation omitted). "Dominion or control over the object need not be exclusive." *People v Flick*, 487 Mich 1, 14; 790 NW2d 295 (2010). "The defendant need not own or have actual physical possession of the substance to be found guilty of possession; constructive possession is sufficient." *Wolfe*, 440 Mich at 519. Moreover, "possession may be proved by circumstantial evidence and reasonable inferences drawn from this evidence." *People v Nunez*, 242 Mich App 610, 615; 619 NW2d 550 (2000) (citation omitted).

While executing the search warrant at Abrego's house, Detective Frazier found 19 small individual bags containing cocaine. Frazier testified that individual bags with small quantities were typical of narcotics for sale. Abrego testified that when she and defendant were first alerted to the presence of police at the house, defendant handed her the large plastic bag filled with smaller bags that contained crack cocaine. Although defendant argues that there were multiple people living in the house and he contends that there was no direct connection between him and the

-10-

cocaine, Abrego's testimony that defendant handed her the bag and instructed her to do something with it provided the necessary connection to permit the jury to find that defendant had constructive possession of the cocaine. Moreover, the manner in which the cocaine was packaged in individual smaller bags supported a reasonable inference that it was intended for sale. Accordingly, there was sufficient evidence to support defendant's conviction of possession with intent to deliver less than 50 grams of cocaine.

### 4. FELONIOUS ASSAULT, FELON-IN-POSSESSION, AND FELONY-FIREARM CONVICTIONS

Next, defendant argues that there was insufficient evidence to support his convictions of felonious assault, felon-in-possession, and felony-firearm because the prosecutor failed to prove intent for the felonious assault charge, and failed to prove that he had actual or constructive possession of a firearm or ammunition.

To sustain a conviction of felonious assault, the prosecutor was required to prove "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Nix*, 301 Mich App 195, 205; 836 NW2d 224 (2013), lv den 495 Mich 880 (2013) (citation omitted). Felonious assault is a specific-intent crime requiring the defendant must actually intend to commit a battery or to place the victim in reasonable apprehension of an imminent battery. *People v Terry*, 217 Mich App 660, 662-663; 553 NW2d 23 (1996).

Felony-firearm, MCL 750.22b(1), applies to "[a] person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony . . . ." *People v Burgenmeyer*, 461 Mich 431, 436; 606 NW2d 645 (2000). "To be guilty of felony-firearm, one must *carry* or *possess* the firearm, and must do so *when* committing or attempting to commit a felony." *Id*. at 438. Felon-in-possession, MCL 750.224f(1), prohibits a person who has been convicted of a felony from possessing a firearm. For both felony-firearm and felon-in-possession of a firearm, "[p]ossession may be actual or constructive and may be proved by circumstantial evidence." *Burgenmeyer*, 461 Mich at 437. "A defendant may have constructive possession of a firearm if its location is known to the defendant and if it is reasonably accessible to him." *Id*.

The victim told Worley that defendant and defendant's "cousin" both participated in physically assaulting the victim, including hitting him in the head with a gun. Detective Sharp found three guns in Abrego's house and found nine-millimeter ammunition in the bedroom she shared with defendant. Further, Abrego testified that she saw defendant in possession of the victim's gun, which was a nine-millimeter handgun. DNA consistent with defendant on the victim's gun corroborated her account. Because the parties stipulated that defendant was not allowed to have possession a firearm, this additional evidence was sufficient to enable the jury to find beyond a reasonable doubt that defendant possessed a firearm and the ammunition found in the house, and that defendant feloniously assaulted the victim with a firearm.

### 5. WITNESS INTIMIDATION

Lastly, defendant contends that there was insufficient evidence to support his conviction of witness intimidation. Under MCL 750.122(6), "[a] person shall not willfully impede, interfere

with, prevent, or obstruct or attempt to willfully impede, interfere with, prevent, or obstruct the ability of a witness to attend, testify, or provide information in or for a present or future official proceeding." To show witness intimidation, the prosecutor must prove that the defendant (1) committed or attempted to commit (2) any act or attempt that was willfully done (3) to impede, interfere with, prevent, or obstruct (4) the ability of a witness to attend, testify, or provide information in or for a present or future official proceeding (5) with knowledge or a reason to know that the person subjected to interference could be a witness at any official proceeding. *People v Greene*, 255 Mich App 426, 438; 661 NW2d 616 (2003).

Abrego stated she informed defendant that she had been subpoenaed to testify at defendant's preliminary examination. Abrego also stated that she did not attend the preliminary examination because she was scared, defendant told her that the prosecutor could only charge her with a 90-day misdemeanor for failing to appear, and that he would help her take care of any charges when he was released from jail. She testified that she was afraid of defendant. These statements by defendant, as related by Abrego, were sufficient to prove that defendant willfully and forcefully interfered with and prevented Abrego's attendance at his preliminary examination, with knowledge that Abrego had been subpoenaed to attend. See *Greene*, 255 Mich App at 438.

## V. MISSING-WITNESS INSTRUCTION

In his final argument on appeal, defendant contends that the trial court abused its discretion when it determined the prosecutor exercised due diligence when attempting to locate and produce the victim and Andrea Wright, another witness, for trial, and when the court failed to give a missing-witness instruction related to the prosecutor's failure to produce these witnesses. We disagree.

### A. STANDARDS OF REVIEW

We review a trial court's determination of due diligence and the appropriateness of a "missing witness" instruction for an abuse of discretion. *People v Eccles*, 260 Mich App 379, 389; 677 NW2d 76 (2004). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *Duenaz*, 306 Mich App at 90.

### B. ANALYSIS

When a prosecutor endorses a witness for trial under MCL 767.40a(3), the prosecutor must exercise due diligence to produce the witness at trial. *Eccles*, 260 Mich App at 388. If the prosecutor fails to produce an endorsed witness, the prosecutor may show that the witness could not be produced despite the exercise of due diligence. *Id.* Due diligence is measured by reasonableness, and is established by the prosecutor's "attempt to do everything reasonable, not everything possible, to obtain the presence of a witness." *Id.* at 391 (quotation marks and citation omitted). Reasonableness is determined by "whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *People v James (After Remand)*, 192 Mich App 568, 571; 481 NW2d 715 (1992). If the trial court finds that the prosecution failed to establish due diligence, the trial court should instruct the jury "that it may infer that the missing witness's testimony would have been unfavorable to the prosecution's case." *Eccles*, 260 Mich App at 388.

-12-

Officer Reed testified that he spent hours looking for the victim, including hours surveilling an address in Taylor, Michigan. At the Taylor address, Officer Reed questioned Kasandra Strawser, whom Reed had previously seen with the victim. Strawser denied that the victim was there and denied knowing his whereabouts. Officer Reed also checked the Law Enforcement Information Network ("LEIN") database for the victim, and noted that the victim had several outstanding warrants. Officer Reed did not contact any of the local police agencies to determine if they had any contact with the victim or knew his whereabouts, but he concluded from the number of outstanding warrants that the victim could not be located. Officer Reed also visited the last known address that the victim gave him, but the victim was not there.

Wright, who was identified as the victim's stepmother, was not a known witness to any of the events at issue, but Officer Reed stated he believed there might be some benefit to speaking with other individuals known to the parties, such as Wright. However, Officer Reed also testified that did not know Wright's birthdate, middle name, phone number, or address, and did not even know the city or county where she lived. When Reed looked for Wright's name in a police database, there were more than a hundred people with her name.

Reed's attempts to locate the witnesses were reasonable in light of the information available to him for both Wright and the victim. Thus, the trial court did not abuse its discretion by finding that Reed made reasonable, good-faith efforts to procure the witnesses. Accordingly, the trial court did not abuse its discretion when it denied defendant's request for a missing-witness instruction.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly
/s/ Michelle M. Rick